STATE ex rel Payne, Attorney General, Plaintiff, v. EWERT, as Treasurer of the South Dakota Rural Credit Board, Defendant.

· (189 N. W. 522.)

(File No. 5166.   Opinion filed August 5, 1922.)

1. **Rural Credits—Bank Deposits of Funds—Limiting Deposit to 40% of Bank Capital and Surplus—Mandamus to Enforce—Statutes.**

Under Sec. 10,170, Code 1919, providing that the State Rural Credit Board shall designate such banks within the state as deemed necessary to receive the board's deposits, and shall fix maximum amount to· be deposited in each, in no case at more than 40% of· paid up· capital and surplus of such banks, each such bank (save state banks) ' to give bonds in not less than amount of the deposit for safe keeping and return thereof; Sec. 10,171, providing that said board's treasurer shall not be liable personally on his official bond for any money lost by reason of failure of insolvency of any bank named a board depositary, provided such bank has given such bond and same has been approved by said board before treasurer has deposited board funds therein, etc.; Sec. 10,151, as amended by Ch. 304, Laws 1919, providing that for purpose of fostering and encouraging agriculture, etc., the system of rural credits shall continue to be controlled and managed by said board, etc.; Sec. 10,153, as amended by said Ch. 304, making it duty of such board to maintain at the capital the system of rural credits heretofore established with authority to adopt rules and regulations not inconsistent with laws of state, proper and necessary for conduct of its business, and defining duties of its officers, agents or employees, who shall be under its direction in all matters not inconsistent with provisions of said Ch.; and

Sec. 10,157, making it duty of the board's treasurer to keep its books of account, receive and keep safely its money or that of the state that may come into his possession, and to do and perform any and all other acts as may be directed by the board; **held,** that said treasurer is prohibited from making a deposit in any bank in this state in excess of said 40%; this notwithstanding defendant treasurer's contention that it was impossible for him to abide by such rule because said board had designated 220 state and national banks as depositaries for the inactive accounts and certificates of deposit, 71 state and national banks as depositaries for active accounts, and that such banks were insufficient in number to enable him to deposit all said board's money without exceeding said limit, that to properly keep and safeguard same he was compelled to exceed such limitation, that the board designated as deposi-- taries the banks it deemed expedient to use, that it deemed some of them unsafe, that other banks refused to comply with the required conditions, that still others were unable to so comply, that others were at inaccessible points for prompt service, that it is impossible for defendant to deposit funds entrusted to him without exceeding such limitation, and that if proceeds from sale of bonds had been left on deposit in the Guaranty Trust Company, New York City, an outside depositary, the rate of interest would only have been 3% (the rate in certain banks designated by said board as active checking accounts drawing 3½%, those in banks designated as inactive checking accounts drawing 5%, and deposits in banks on certificate of deposit drawing 6%); a further defense being that the board's business could not be safely and conveniently transacted in every emergency if said deposits were absolutely limited to 40%, etc. So **held,** under a showing that aggregate capital and surplus of the 561 state banks and trust companies in this state and of the 134 national banks therein are capitalized at such total amount that 40% thereof would be more than the total deposits so made.

2    Same—Whether 40% Limitation Merely Goes to Liability of Treasurer for Safety of Funds—Such Safety the Controlling Legislative Motive—Board, Not Treasurer, to Determine Re Deposits—Statutes.

Nor is defendant's contention that proper construction of Secs. 10,170 and 10,171 is that the 40% limitation merely goes to question of treasurer's liability for safety of the funds, tenable; that the safety of the public funds was the motive controlling Legislature when it enacted said limitation. **Held, further,** that said board, and not the treasurer, shall dictate when, where and in what sums deposits of bank deposits shall be made; that under Secs. 10,157, 10,170, and Secs. 10,151 and 10,153

as amended by Ch. 304, Laws 1919, it is said treasurer's duty to obey orders of said board in making fund deposits.

**3.    Same—Statutory Limitation of Deposit as "Maximum Accounts" as Limiting Individual Bank Deposit to 40%.**

Under said Sec. 10,170, wherein it provides: "such maximum amounts shall in no case be fixed at more than 40% of the pail up capital and surplus of such bank," the legislative intent was that the total deposit of rural credit funds in any given bank in this state should never exceed 40% of its paid up capital and surplus.

**4.    Same—Arguments ab Inconvenienti as Addressed to Said Board and Legislature, Not to Court.**

In determining the law applicable to and governing said deposits, the arguments ab inconvenienti are matters to be addressed to said board and to the Legislature, and cannot be considered by Court when the legislative meaning is clear and unambiguous.

Smith, and Anderson, JJ., not sitting.

Original application by the State of South Dakota, upon the relation of Byron S. Payne, Attorney General, against A. W. Ewert, as Treasurer of the South Dakota Rural Credit Board, for a writ of prohibition to restrain defendant as such Treasurer from depositing funds of said Board in banks of this state in excess of forty per cent of the capital and surplus of each of such banks.  Peremptory writ issued requiring recall of excess deposits within 90 days.

*Byron S. Payne,* Attorney General, for Plaintiff.

*Martens & Goldsmith,* for Defendants.

GATES, P. J.  A petition for a writ of prohibition was filed by the Attorney General seeking to restrain the defendant, as treasurer of the South Dakota Rural Credit Board, from depositing funds of said board in banks of this state in excess of 40 per cent of the capital and surplus of each of such banks.  An alternative writ of prohibition was issued.  The defendant made return to said writ, and certain exhibits were reecived in evidence. Upon the pleadings, exhibits and a stipulation filed the plaintiff moves for judgment.

The return made by defendant shows that on May 31, 1922, he had on deposit in banks in this state $2,638,521.33 as follows: In 18 banks designated as active checking accounts, $1,445,500,

drawing 3½ per cent interest; in 13 banks designated as inactive checking accounts $358,500, drawing 5 per cent interest; and in 191 banks in certificates of deposit $834,521.33, drawing 6 per cent interest. In the 18 banks with active accounts the deposits were $628,500 in excess of 40 per cent of the capital and surplus of such banks. In the 13 banks with inactive accounts such excess was $157,900, making a total excess of $786,400. But the return made by the rural credit commissioner to the executive accountant showed that the total deposits on May 31, 1922, in banks in South Dakota aggregated $3,351,932.94 as against said sum of $2,638,521.33 indicated in the treasurer's return to the writ. Such return to the executive accountant showed that $1,747,-443.19 was deposited in 29 banks under active accounts bearing 3½ per cent interest; that $537,700 was deposited in 42 banks under inactive accounts bearing 5 per cent interest, and $1,066,-789.75 was deposited in 218 banks on certificates of deposit bearing 6 per cent interest, besides $915,550.20 deposited in the Guaranty Trust Company, New York City, bearing 3 per cent interest, making a total deposit of rural credit funds on May 31, 1922, of $4,267,483.14.

[1]    Section 10170, Rev. Code 1919, reads as follows:.

"The board shall designate such banks within the state as it may deem necessary to receive the deposits of the funds of the board; and shall fix the maximum amount to be deposited in each. Such maximum amounts shall in no case be fixed at more than forty per cent of the paid-up capital and surplus of such bank. The board shall require such banks, except state banks, to give bonds for the safe-keeping and return of the deposits. The bond required shall not be less than the amount of the deposit, and the treasurer of the board shall not make any deposit in any bank required to give bond before such bond has been given and approved by the board. Such bank shall pay such minimum rate of interest on such deposits as the board may determine, which interest shall be covered into the treasury of the board and become a part of the reserve fund. The board shall make such other and further regulations for the safe-keeping of its fund, deriving interest on its deposits, and selling its bonds and warrants as may appear beneficial; and such board may prescribe a reasonable time within which the purchase money for bonds and warrants may

be drawn by the treasurer from the purchasing bank, and such treasurer shall not be liable for such funds until directed by such board to withdraw the same."

Section 10171, Rev. Code 1919, reads:

"The treasurer of such board shall not be liable personally upon his official bond for any money that may be lost by reason of the failure or insolvency of any bank which may be named a depositary by the board; provided, that the bank named as a depositary required to give bonds shall have given such bond and the same shall have been approved by the board before the treasurer has deposited funds of the board therein and the treasurer has complied with further requirements of the board imposed upon him in relation to such deposits."

Section 10151, Rev. Code 1919, as amended by chapter 304, Laws 1919, says:

"For the purpose of fostering and encouraging agriculture, dairying and live stock raising in this state and the development and improvement of farm lands, the system of rural credits, heretofore established, shall continue to be controlled and managed by the 'South Dakota rural credit board,' which shall have charge of the execution of this chapter and all acts amendatory thereto. * * * "

Section 10153, Rev. Code 1919, as amended by chapter 304, Laws 1919, says:

"It shall be the duty of such board to maintain, at the seat of government of this state, the system of rural credits heretofore established; it shall have authority * * * to adopt rules and regulations, not inconsistent with the laws of this state, proper and necessary for the conduct of its business; * * * to define the duties of the officers, agents or employees of the board, which officers and employees shall be under the direction of the board in all matters not inconsistent with the provisions of this chapter. * * * "

Section 10157, Rev. Code 1919, says:

"It shall be the duty of the treasurer of such board to keep the books of account of such board; to receive and keep safely the money of such board or of the state that may come into his possession, * * * and to do and perform any and all other acts as may be directed by the board."

It is the contention of the Attorney General that by reason of the above sections of the Rural Credits Act the treasurer is prohibited from making a deposit in any bank in this state in excess of 40 per cent of the paid-up capital and surplus of such bank. The return of defendant does not in specific language challenge such contention, but alleges in effect that it was impossible for him to abide by such rule. He says that the Rural Credit Board designated 220 state and national banks as depositaries for the inactive accounts and certificates of deposit and 71 state and national banks as depositaries for the active accounts; that such banks were insufficient in number to enable him to deposit all of the money of said board without exceeding the 40 per cent limitation; that to properly keep and safeguard the money he was compelled to exceed such limitation; that the board designated as depositaries the banks that it deemed expedient to use; that it deemed some of the banks unsafe; that other banks refused to comply with the required conditions; that still other banks were unable to so comply; that others were at inaccessible points for prompt service; that it is impossible for defendant to deposit funds intrusted to him without exceeding such 40 per cent limitation; and that if the proceeds from the sale of bonds had been left on deposit in the New York bank the rate of interest would only have been 3 per cent. A further return by the rural credit commissioner says that the business of the board could not be safely and conveniently transacted in every emergency if the amount of deposits in banks were absolutely limited to 40 per cent of the capital and surplus of each of said banks.

On the other hand, the Attorney General shows that the aggregate capital and surplus of the 561 state banks and trust companies in this state is more than $11,000,000, and that 40 per cent thereof would be $4,410,991; that the aggregate capital and surplus of the 134 national banks in this state is more than $9,000,000, and that 40 per cent thereof would be $3,722,400, thus making possible depositaries within the 40 per cent limitation to the amount of more than $8,000,000.

[2] Upon the oral argument, however, the defendant contends that a proper construction of sections 10170 and 10171 together reveals that the 40 per cent limitation merely goes to the question of the liability of the treasurer for the safety of the

funds. He argues that he has the right to make deposits when, where, and in what sums he will, but if he makes a deposit in an unauthorized bank he will be liable for the deposit, or if he makes a deposit in an authorized bank in excess of the authorized amount he will be liable for the excess. We do not think the Rural Credit Act is subject to such construction. We are of the opinion that the safety of the public funds was the motive controlling the Legislature when it enacted the 40 per cent limitation. We are of the opinion that it is the Rural Credit Board, and not the treasurer, who shall dictate when, where, and in what sums deposits shall be made in banks. We are of the opinion that under the Rural Credit Act it is the duty of the treasurer to obey the orders of the Rural Credit Board in making deposits of its funds. Rev. Code 1919, §§ 10157, 10170, and sections 10151 and 10153 as amended by chapter 304, Laws 1919.

[3] We are further of the opinion that when the Legislature stated in said section 10170:

"Such maximum amounts shall in no case be fixed at more than forty per cent of the paid-up capital and surplus of such bank"

—it intended that the total deposit of rural credit funds in any given bank in this state should never exceed 40 per cent of the paid-up capital and surplus of such bank.

[4] The arguments ab inconvenienti are matters to be addressed to the Rural Credit Board and to the Legislature, and cannot be considered by the court when the legislative meaning is clear and unambiguous.

A peremptory writ will issue, requiring defendant to observe the 40 per cent limitation in the future and to withdraw all deposits in excess of the said 40 per cent limitation, but in order that no financial disturbance may come to the depositaries by a sudden recalling of such excess deposits the defendant will be given 90 days from the entry of judgment within which to make return of his doings under the peremptory writ.

SMITH, and ANDERSON, JJ., not sitting.